## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 10 2020, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Monika Prekopa Talbot
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of E.V. (Minor Child) and

T.N. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

June 10, 2020

Court of Appeals Case No.
19A-JT-2753

Appeal from the Decatur Circuit Court

The Honorable Timothy B. Day, Judge

Trial Court Cause No.
16C01-1904-JT-153

**Mathias, Judge.**

[1] T.N. ("Mother") appeals the Decatur Circuit Court's order terminating her parental rights to E.V., her minor child. Mother argues that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] E.V. was born to Mother and S.V. ("Father") in February 2013. In January 2017, police officers were called to Mother's hotel room due to a domestic violence incident. While responding to the incident, law enforcement learned that there was an active warrant for Mother's arrest, and she was taken into custody. Father could not be located. The Indiana Department of Child Services ("DCS") removed E.V. from Mother's care.

[4] DCS filed a Child in Need of Services ("CHINS") petition shortly after E.V. was removed from Mother's care. E.V. was adjudicated a CHINS on January 31, 2017.

[5] During the CHINS proceedings, Mother did not have a stable home or stable employment. She tested positive for methamphetamine. Mother sporadically participated in home-based services and supervised visitation with E.V. Family case managers found it difficult to maintain contact with Mother. And Mother never allowed case managers into her home.

Because Mother missed a significant number of visits with E.V., visitation ceased in March 2018. Family case managers attempted to communicate with Mother via telephone calls and text message with the goal of assisting Mother with her participation in services. The family case manager texted Mother "multiple times" in an attempt to reestablish visitation between Mother and E.V. Mother did not reply to the text messages. Tr. p. 16.

DCS filed a petition to terminate Mother's parental rights in May 2019. Mother did not appear at the initial hearing.

Mother also failed to appear at the termination fact-finding hearing held on October 24, 2019.[1] Mother had actual notice of the hearing. Tr. p. 10. Family case manager Rani Judd testified that there is no bond between Mother and E.V. Tr. p. 16. Family case manager Kimberly Miller visited with Mother in July 2019. She discussed the termination proceedings with Mother. Mother told Miller that she did not plan to attend the fact-finding hearing, but she also refused to voluntarily terminate her parental rights to E.V. Tr. p. 18. Miller offered Mother services and visitation with E.V. Mother declined Miller's offer. E.V.'s guardian ad litem testified that termination of Mother's parental rights was in E.V.'s best interest. Tr. p. 23. She stated that E.V. is excelling in his pre-adoptive placement. *Id*.

---

[1] Father did not appear at the fact-finding hearing, his parental rights were also terminated, and he does not participate in this appeal.

[9] On October 24, 2019, the trial court issued an order terminating Mother's parental rights to E.V. The trial court found in pertinent part:

> There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for the placement outside the parent's home will not be remedied in that: . . . Mother . . . [has] failed to engaged with the Child or the Department with regard to services, visitation, or parenting in general and [has] failed to make any efforts to improve [her] situation[] or avail [herself] of any resources provided in order to do so.
>
> There is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the child in that: the Child has been placed with his current placement for such a lengthy period that he has developed an extremely strong familial bond with them, . . . Mother . . . [has] no bond with the Child whatsoever, and that disrupting the established bond between the Child and his current caregivers would severely traumatize the Child and deny him the permanency he needs to thrive.
>
> Termination is in the child's best interests . . . in that: the Child has a strong familial bond with his current foster placement, regarding them as his mother and father, has no bond with either biological parent whatsoever, and the Child would best achieve the permanency, stability, and support he needs and is receiving from his placement following the termination of his biological parents' parental rights.

Appellant's App. p. 27. Mother now appeals.

## Standard of Review

[10] Indiana appellate courts have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867,

871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Off. of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[11]     Mother does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true and determine only whether these unchallenged findings are sufficient to support the judgment. *In re A.M.,* 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*; *see also T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied*.

# Discussion and Decision

[12]     Mother claims that the trial court's order involuntarily terminating her parental rights is not supported by clear and convincing evidence. Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

[13] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009). Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection 4(b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[14] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Off. of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[15] The purpose of terminating parental rights is not to punish parents but instead to protect the child. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d at 1259.

[16] Mother argues that the trial court clearly erred by concluding that there was a reasonable probability that the conditions that resulted in the child's removal from her care, or the reasons for his continued placement outside her home, would not be remedied. When considering whether DCS has proven this factor by clear and convincing evidence, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156–57 (Ind. Ct. App. 2013), *trans. denied*.

[17] Mother contends that DCS failed to prove that there was a reasonable probability that the reasons for E.V.'s continued placement outside her home would not be remedied because DCS failed to present evidence of the services it offered to Mother. The family case manager testified that Mother was offered home-based services, a substance abuse assessment, drug screens, and visitation with E.V. Tr. p. 15. We agree with Mother that the family case manager's testimony regarding services and Mother's participation was cursory.

[18] However, the family case manager was not able to offer detailed testimony because of Mother's lack of participation in services and minimal visitation with E.V. Mother did not maintain communication with the DCS service providers, did not keep them informed of her address, refused to allow them inside her home, and has not had any contact with E.V. since March 2018. And prior to March 2018, Mother's participation in services and visitation was sporadic. Tr. pp. 15–16.

[19] After he was removed from Mother's care, E.V. continued to be placed outside of Mother's home because her participation in services was inconsistent. Importantly, Mother refused to participate in any services or visitation after March 2018 even though her family case managers offered services and visitation to her. Mother abandoned E.V. and continued to show her lack of commitment to the child when she failed to appear for the termination fact-finding hearing.

[20] For all of these reasons, we conclude that clear and convincing evidence supports the trial court's finding that there is a reasonable probability that the conditions that resulted in the child's removal from Mother's care, or the reasons for his continued placement outside her home, would not be remedied.[2]

---

[2] Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, we decline to address Mother's additional claim that DCS failed to prove that continuation of the parent-child relationship threatens the children's well-being. *In re A.K.*, 924 N.E.2d at 220. And Mother does not challenge the trial court's finding that termination of her parental rights is in E.V.'s best interests.

# Conclusion

Clear and convincing evidence supports the trial court's order involuntarily terminating Mother's parental rights to her child.

Affirmed.

Riley, J., and Tavitas, J., concur.